*FILED*
*2013 OCT 15 P 12: 00*

Linda Lye (CA SBN 215584)
llye@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street, 2nd Floor
San Francisco, California 94111
Telephone:    415-621-2493
Facsimile:    415-255-8437

ATTORNEYS FOR *AMICUS* AMERICAN CIVIL
LIBERTIES UNION OF NORTHERN CALIFORNIA

Ezekiel Edwards (eedwards@aclu.org)
Nathan Freed Wessler (nwessler@aclu.org)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone:    212-549-2500
Facsimile:    212-549-2654

ATTORNEYS FOR *AMICUS*
AMERICAN CIVIL LIBERTIES UNION

Hanni M. Fakhoury (CA SBN 252629)
hanni@eff.org
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone:    415-436-9333
Facsimile:    415-436-9993

ATTORNEYS FOR *AMICUS*
ELECTRONIC FRONTIER FOUNDATION

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | CASE No.: 12-cr-00030-EMC/EDL |
|---|---|
| Plaintiff, | **DECLARATION OF LINDA LYE** |
| v. | Hearing Date: November 5, 2013<br>Time:          9:00 a.m.<br>Location:    San Courtroom E, 15th Floor |
| DIAZ-RIVERA, et al., | |
| Defendants. | |

I, Linda Lye, declare as follows:

1.     I am counsel for the American Civil Liberties Union of Northern California, proposed *amicus* in the above-referenced action. The information in this declaration is based upon my personal knowledge and if called upon to testify, I could and would competently testify thereto.

### Efforts to ascertain the parties' positions

2.     On October 11, 2013, I sent an email to Jeffry Glenn, counsel for Mr. Lara, informing him that the ACLU and the Electronic Frontier Foundation ("EFF") wished to file an *amici* brief in support of Defendants' motion to compel discovery, filed by Mr. Lara (ECF No. 226), and requesting Mr. Lara's consent for leave to file an *amici* brief in support of the motion to compel discovery. Mr. Glenn responded that Mr. Lara consented to the filing of this *amici* brief.

3.     On October 11, 2013, I sent an email to counsel for the government, Alexandra Summer and Waqar Hasib, and informed them that the ACLU and EFF wished to file an *amici* brief in support of the motion to compel discovery. Ms. Summer responded that the government does not object to the ACLU and EFF filing an *amici* brief regarding this motion.

### Preparation of brief

4.     I was personally involved in the preparation of the proposed *amici* brief. No party's counsel, or party, authored this brief in whole or in part. No party or counsel for a party made a monetary contribution intended to fund the preparation or submission of this brief. No party or entity other than *amici* or their counsel made a monetary contribution to this brief's preparation or submission.

### Pleadings in other cases

5.     For the Court's convenience, attached as exhibits to this declaration are pleadings from other cases cited in the proposed *amici* brief.

6.     Attached as Exhibit 1 to this declaration is a true and correct copy of excerpts of the government's Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary

1  Injunction in *ACLU v. Clapper*, S.D.N.Y Case No. 13-cv-03994, which I downloaded from

2  Pacer. The document is ECF No. 61 and was filed on October 1, 2013.

3

4  7.    Attached as Exhibit 2 to this declaration is a true and correct copy of excerpts of

5  the government's Notice of Motion and Motion For Summary Judgment in *ACLU of Northern

6  *California v. Dep't of Justice*, N.D. Cal. Case No. 12-cv-04008-MEJ. The document is ECF No.

7  43 and was filed on September 23, 2013. I am counsel for plaintiffs in that matter and received

8  the brief through the Court's electronic case filing system.

9  8.    Attached as Exhibit 3 to this declaration is a true and correct copy of excerpts of

10  a declaration filed in support of the government's Motion for Summary Judgment referenced in

11  paragraph 7 above. The document is ECF No. 43-1 and I received it through the Court's

12  electronic case filing system.

13

14  I declare under penalty of perjury under the laws of the United States that the foregoing

15  is true and correct. Executed this 15th day of October 2013 in San Francisco, California.

16

17                                        */s/ Linda Lye*

18                                            Linda Lye

19

20

21

22

23

24

25

26

27

28

# Exhibit 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION; AMERICAN CIVIL LIBERTIES UNION FOUNDATION; NEW YORK CIVIL LIBERTIES UNION; and NEW YORK CIVIL LIBERTIES UNION FOUNDATION,<br><br>                   Plaintiffs,<br><br>            v.<br><br>JAMES R. CLAPPER, in his official capacity as Director of National Intelligence; KEITH B. ALEXANDER, in his official capacity as Director of the National Security Agency and Chief of the Central Security Service; CHARLES T. HAGEL, in his official capacity as Secretary of Defense; ERIC H. HOLDER, in his official capacity as Attorney General of the United States; and ROBERT S. MUELLER III, in his official capacity as Director of the Federal Bureau of Investigation,<br><br>                  Defendants. | 13 Civ. 3994 (WHP)<br><br>ECF Case |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

STUART F. DELERY
Assistant Attorney General

JOSEPH H. HUNT
Director

ANTHONY J. COPPOLINO
Deputy Director

JAMES J. GILLIGAN
Special Litigation Counsel

MARCIA BERMAN
Senior Trial Counsel

BRYAN DEARINGER
Trial Attorney
U.S. Department of Justice
Washington, D.C.

PREET BHARARA
United States Attorney for
the Southern District of New York

DAVID S. JONES
TARA M. La MORTE
JOHN D. CLOPPER
CHRISTOPHER HARWOOD
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, NY 10007
Tel. No. (212) 637-2739 (Jones)
Fax No. (212) 637-2730
david.jones6@usdoj.gov
tara.lamorte2@usdoj.gov
john.clopper@usdoj.gov
christopher.harwood@usdoj.gov

**TABLE OF CONTENTS**

                                                                                              **PAGE**

PRELIMINARY STATEMENT ......................................................................................................1

BACKGROUND ...........................................................................................................................4

ARGUMENT................................................................................................................................11

POINT I.      PLAINTIFFS' ASSERTED INJURIES ARE TOO SPECULATIVE
              TO ESTABLISH THEIR STANDING, OR SHOW IRREPARABLE
              HARM............................................................................................................................12

       A.     Plaintiffs Lack Standing and Therefore Cannot Show a
              Substantial Likelihood of Success on the Merits.........................................12

       B.     Plaintiffs' Speculation Also Does Not Establish Irreparable Harm...........14

POINT II.     PLAINTIFFS CANNOT DEMONSTRATE THEY ARE LIKELY TO
              SUCCEED IN THIS ACTION BECAUSE THE NSA'S BULK
              COLLECTION OF TELEPHONY METADATA IS AUTHORIZED
              UNDER SECTION 215..................................................................................................15

       A.     Judicial Review of Plaintiffs' Claim That the NSA's Bulk
              Collection of Telephony Metadata Exceeds Its Statutory
              Authority Is Implicitly Precluded .............................................................15

       B.     Plaintiffs' Claim That the NSA's Bulk Collection of Telephony
              Metadata Exceeds Its Statutory Authority Under Section 215
              Is Also Unlikely to Succeed on the Merits ................................................16

POINT III.    PLAINTIFFS CANNOT DEMONSTRATE THAT THEY ARE
              LIKELY TO SUCCEED ON THEIR FOURTH AMENDMENT CLAIM ..........24

       A.     Collection and Query of Telephony Metadata Does Not
              Constitute a Search ...................................................................................25

       B.     The NSA's Bulk Collection of Telephony Metadata is
              Reasonable ................................................................................................31

POINT IV.     PLAINTIFFS CANNOT DEMONSTRATE THAT THEY ARE
              LIKELY TO SUCCEED ON THEIR FIRST AMENDMENT CLAIM ..............33

|  | A. | Plaintiffs' First Amendment Claim Fails Because Good-Faith Investigatory Conduct Not Intended to Deter or Punish Protected Speech or Association Does Not Violate the First Amendment.............33 |
|  | B. | Because the Telephony Metadata Program Imposes No Direct or Significant Burden on Plaintiffs' Associational Rights, the "Exacting Scrutiny" Test Does Not Apply .................................................33 |
|  | C. | Even if "Exacting Scrutiny" Applied, the Telephony Metadata Program Serves the Government's Compelling Interest in Protecting National Security in a Manner That Is Not Practically Achievable by Other Means.......................................................................38 |
| POINT V. | | THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST REQUIRE THAT AN INJUNCTION BE DENIED.............................................39 |
| CONCLUSION.................................................................................................................................40 | | |

suspending the Government's authority to query the database without the court's approval)
reauthorized the program in its current form. Importantly, even the most serious of these
incidents did not involve the compilation of detailed profiles of Americans' lives, as
Plaintiffs insinuate has been occurring.[5] Shea Decl. ¶¶ 36-43.

The telephony metadata program has contributed to the fight against terrorism in
important ways. Metadata analysis provides information that assists the FBI in detecting,
preventing, and protecting against terrorist threats to the national security of the United States by
providing the predication to open investigations, advance pending investigations, and revitalize
stalled investigations. It can also rule out avenues of investigation, allowing the FBI to redirect
scare resources. Metadata analysis can also provide early warning signals that alert the FBI to
individuals who are inside the United States and are linked to persons who pose a threat to the
national security. Similarly, metadata analysis can be of importance in situations where timely
information about communications by and among suspected terrorists may be necessary to
prevent the occurrence (or recurrence) of terrorist attacks. Holley Decl. ¶¶ 8-9, 18-23, 28.

The accompanying FBI declaration discusses unclassified examples in which telephony
metadata analysis, together with other intelligence methods, played a role in the FBI's counter-
terrorism successes. *Id.* ¶¶ 24-26. One such example is the contribution of telephony metadata
analysis to the FBI's disruption, in fall 2009, of the plan by al-Qa'ida associated terrorist

---

[5] The most serious compliance problem involved an "alert list" process by which
telephone identifiers that had been associated with foreign terrorist organizations, but which in
many cases had not been approved under the "reasonable, articulable suspicion" standard, were
used, not as terms to query the metadata archive, but to alert analysts if identifiers associated
with foreign terrorist groups were in contact with someone in the United States. Analysts could
not query the database using these "alert list" identifiers to learn what numbers they had been in
contact with unless and until they were approved under the "reasonable, articulable suspicion"
standard. Shea Decl. ¶ 37. (Other compliance incidents have occurred since 2009, due to human
error and technology issues, although not on the same scale as the incidents discovered in 2009.
All have likewise been reported to the FISC and appropriately remedied.)

10

Najibullah Zazi and his associates to bomb the New York City subway. After signals
intelligence, together with FBI investigative efforts, revealed that Zazi was in contact with al
Qa'ida-associated terrorists, NSA received Zazi's telephone number from the FBI and ran it
against the telephony metadata, identifying and passing additional leads back to the FBI for
investigation. One of these leads revealed a previously unknown number for co-conspirator Adis
Medunjanin, and corroborated his connection to Zazi as well as to other U.S.-based extremists.
Ultimately, Zazi and his co-conspirators were arrested; Zazi pled guilty to conspiring to bomb
the New York City subway system, and Medunjanin was sentenced to life in prison. *Id.* ¶ 26.

## ARGUMENT

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as
of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (quotation marks and citations omitted).
The movant bears the burden of demonstrating "by a clear showing" that the remedy is necessary
and that the prerequisites for issuance of the relief are satisfied. *Mazurek v. Armstrong*, 520 U.S.
968, 972 (1997). "[P]laintiff[s] seeking a preliminary injunction must establish that [they are]
likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of
preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the
public interest." *Winter v. NRDC*, 555 U.S. 7, 20 (2008); *see Salinger v. Colting*, 607 F.3d 68,
79-80 (2d Cir. 2010). Where, as here, the moving parties seek a mandatory injunction that alters
the status quo, and that will affect government action taken in the public interest pursuant to a
statutory scheme, the movants must make an even more compelling demonstration of entitlement
to preliminary relief than is normally required. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d
Cir. 2011); *see also Sussman v. Crawford*, 488 F.3d 136, 140 (2d Cir. 2007).

Further, a preliminary injunction cannot issue on the mere basis of speculation or
possibility. *Winter*, 555 U.S. at 21-22. Rather than allowing relief based on a "'possibility' of

11

# Exhibit 2

1  STUART F. DELERY
   Assistant Attorney General
2  ELIZABETH J. SHAPIRO (D.C. Bar No. 418925)
   Deputy Branch Director
3  BRAD P. ROSENBERG (D.C. Bar No. 467513)
   Trial Attorney
4  U.S. Department of Justice
   Civil Division, Federal Programs Branch
5  P.O. Box 883
   Washington, D.C. 20044
6  Telephone: (202) 514-3374
   Facsimile: (202) 616-8460
7  E-mail: brad.rosenberg@usdoj.gov

8  Attorneys for Defendant
   U.S. Department of Justice

9
                      UNITED STATES DISTRICT COURT
10                   NORTHERN DISTRICT OF CALIFORNIA
                        SAN FRANCISCO DIVISION
11

12 AMERICAN CIVIL LIBERTIES UNION     )    Case No. 12-cv-4008-MEJ
   OF NORTHERN CALIFORNIA;            )
13 SAN FRANCISCO BAY GUARDIAN,        )
                                      )    NOTICE OF MOTION AND
14           Plaintiffs,              )    MOTION FOR SUMMARY
                                      )    JUDGMENT AS TO PART 1 AND
15      v.                            )    MEMORANDUM IN SUPPORT
                                      )
16 U.S. DEPARTMENT                    )    Date: November 21, 2013
   OF JUSTICE,                        )    Time: 10:00 a.m.
17                                    )    Place: San Francisco U.S. Courthouse
             Defendant.               )    Judge: Hon. Maria-Elena James
18

19

20

21

22

23

24

25

26

27

28

   DEFENDANT'S NOTICE OF MOTION & MOTION FOR SUMMARY JUDGMENT PT. 1 & MEM. IN SUPPORT
   Case No. 12-cv-4008-MEJ

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................................ 2

BACKGROUND ........................................................................................................................ 3

      1.     Plaintiffs' FOIA Request. ............................................................................ 3

      2.     USAO-NDCA's Use of Location Information and its

            Recordkeeping System.............................................................................. 4

      3.     USAO-NDCA's Attempt to Search for Responsive Records.................... 7

      4.     The Release of Responsive Records. .......................................................... 9

LEGAL STANDARD................................................................................................................ 11

ARGUMENT............................................................................................................................. 13

    I.     Plaintiffs' Request Did Not Reasonably Describe the Records Sought, Because

           USAO-NDCA Had No Method to Locate Responsive Records. ......................... 13

    II.    USAO-NDCA Conducted a Reasonable Search for Responsive Records,

          and Any Further Processing of Plaintiffs' Request is Unnecessary in

          Light of the Sealed Nature of the Records at Issue............................................. 15

    III.   To the Extent USAO-NDCA is Required to Further Process Plaintiffs'

          Request, It Should Not Be Required to Retrieve Files that it Can

          Determine Involve Open Investigations. .............................................................. 19

    IV.   EOUSA Properly Invoked Exemption 7(C). ....................................................... 21

CONCLUSION.......................................................................................................................... 24

1    As these cases make clear, USAO-NDCA would have been justified in denying

2 plaintiffs' request for failing to describe a class of documents subject to disclosure. For that

3 reason alone, summary judgment should be granted to the Department regarding part 1 of

4 plaintiffs' FOIA request.

5

6 **II.     USAO-NDCA Conducted a Reasonable Search for Responsive Records, and Any
        Further Processing of Plaintiffs' Request is Unnecessary in Light of the Sealed
        Nature of the Records at Issue.**

7

8    Even if this Court were to conclude, as a matter of law, that plaintiffs' sweeping request

9 for all applications for court orders seeking location information is a valid request, it must still

10 grant summary judgment to the government. USAO-NDCA has processed that request as best it

11 could, in light of the limitations of its case management system, and should not be required to

12 further process that request as the remaining matters identified through its search are sealed.

13    In an attempt to narrow the scope of records at issue, USAO-NDCA conducted searches

14 in the caption and comment fields in LIONS. The results of those searches were reviewed by the

15 Criminal Division Section Chief, and matters that did not appear to be likely to contain

16 responsive information were eliminated. Kenney Decl. ¶ 16. The results were also checked

17 against this Court's electronic case filing system to ascertain whether the court dockets identified

18 through the LIONS search remain under seal. Kenney Decl. ¶ 19. The results of these efforts

19 have been fruitful, as 148 pages of responsive records have been identified and released to

20 plaintiffs. Kenney Decl. ¶¶ 22-23; Second Kornmeier Decl. ¶ 5.

21    What remains, however, is a mess. The majority of the remaining court dockets

22 identified through the LIONS search have been confirmed to be under seal. *See* Kenney Decl. ¶

23 19 (noting that 566 of 760 matters reflected sealed dockets). Based on the samples that USAO-

24 NDCA has retrieved regarding the remaining matters, none appears likely to contain disclosable

25 information. *See* Kenney Decl. ¶¶ 20-21. This is not surprising; it is USAO-NDCA's usual

26 practice to file these applications under seal, *see* Kenney Decl. ¶¶ 2, 7, 18, and plaintiffs have

27 acknowledged as much. Accordingly, and as set forth in subpart A, *infra*, these materials are

28 exempt from disclosure. In light of that exemption, and as set forth in subpart B, *infra*, requiring

1   further processing of plaintiffs' FOIA request would not only be unduly burdensome, but would

2   constitute a waste of USAO-NDCA's very limited resources. *See Solar Sources, Inc.*, 142 F.3d

3   at 1039 (noting that courts have taken a "'practical approach' . . . in interpreting" FOIA).

### A.   Any Remaining Matters Are Exempt from Disclosure.

6        As a threshold matter, it is undisputed that courts have the inherent authority to order a

7   docket to be sealed. *See The Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004)

8   (recognizing that a court can maintain a sealed docket sheet). Once a court seals a docket, an

9   agency may not disclose the information on it; to do so would be to disclose the existence of a

10  case that a court has ordered to be kept entirely confidential. Any challenge to the court's

11  sealing of the docket must therefore be presented to the court, not the agency. *See id.*

12  (considering First Amendment challenge against chief justice of state supreme court).

13       Agencies are not permitted to disclose information that a court has enjoined them from

14  disclosing. *See GTE Sylvania, Inc. v. Consumers Union*, 445 U.S. 375, 386 (1980) (recognizing

15  that a court order removes any "discretion for the agency to exercise," and that "[t]he concerns

16  underlying the [FOIA] are inapplicable" in that event because the agency cannot be said to have

17  "improperly" withheld records). Thus, in *GTE Sylvania*, the Supreme Court held that an agency

18  had not "improperly" withheld records whose disclosure was prohibited by a court injunction.

19  The Supreme Court explained that "[t]o construe the [agency's] lawful obedience of an

20  injunction issued by a federal district court with jurisdiction to enter such a decree as

21  'improperly' withholding documents under the Freedom of Information Act would do violence

22  to the common understanding of the term 'improperly' and would extend the Act well beyond

23  the intent of Congress." *Id.* at 387. The rationale of *GTE Sylvania* has been extended outside its

24  particular, factual context to other types of court-imposed prohibitions (e.g., sealing orders). *See*

25  *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 155 (1989) (suggesting that *GTE Sylvania*'s

26  reasoning is implicated in cases where the agency has "no discretion . . . to exercise"); *see also*

27  *Senate of Commonwealth of P.R. v. U.S. Dep't of Justice*, 1993 WL 364696, at *6 (D.D.C. Aug.

28  24, 1993) ("The Supreme Court has held that records covered by an injunction, protective order,

DEFENDANT'S NOTICE OF MOTION & MOTION FOR PARTIAL SUMMARY JUDGMENT & MEM. IN SUPPORT
Case No. 12-cv-4008-MEJ

16

1   or held under court seal are not subject to disclosure under FOIA." (internal citation omitted)).

2       Moreover, and apart from these threshold considerations, FOIA Exemption 3 permits the

3   withholding of information "specifically exempted from disclosure" by a statute "refer[ring] to

4   particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Exemption 3 thus incorporates

5   non-disclosure provisions contained in other statutes. *See Dep't of Justice v. Reporters Comm.*

6   *for Freedom of the Press*, 489 U.S. 749, 755 (1989). As particularly relevant here, courts have

7   routinely upheld the application of Exemption 3 for applications and orders for pen registers,

8   citing 18 U.S.C. § 3123(d). *See Jennings v. FBI*, No. 03-cv-01651-JDB, slip op. at 11 (D.D.C.

9   May 6, 2004) (finding that "[t]his same reasoning [as applied to protect information obtained

10   from authorized wiretap] applies to the evidence derived from the issuance of a pen register or

11   trap and trace device") (attached hereto); *Riley v. FBI*, No. 00-2378, 2002 U.S. Dist. LEXIS

12   2632, at *5-*6 (D.D.C. Feb. 11, 2002) (finding that sealed pen register applications and orders

13   were properly withheld pursuant to Exemption 3, noting that "18 U.S.C. § 3123 requires that the

14   pen register materials at issue remain under seal"); *Manna v. U.S. Dep't of Justice*, 815 F. Supp.

15   798, 812 (D.N.J. 1993) (finding that "two sealed applications submitted to the court for the

16   installation and use of pen registers" and "two orders issued by the magistrate Judge who granted

17   the applications" were properly "protected by [§] 3123(d) and Exemption 3"), *aff'd on other*

18   *grounds*, 51 F.3d 1158 (3d Cir. 1995).[5] Section 3123(d) is frequently cited by USAO-NDCA as

19   authority for sealing these types of files. *See* Kenney Decl. ¶ 18.

20       This Court should find that its sealing of dockets precludes the disclosure of information

21   relating to those dockets or, alternatively, reach the same holding as the courts in *Jennings*, *Riley*

22   and *Manna* that Exemption 3 precludes the disclosure of sealed applications and orders for

23   location information. As set forth immediately below, either decision resolves any remaining

24   issues regarding part 1 of plaintiffs' FOIA request.

25

26

27   [5] Similarly, Rule 6(e) of the Federal rules of Criminal Procedure qualifies as an Exemption 3 statute. *See Fund for Constitutional Gov't v. Nat'l Archives & Records Serv.*, 656 F.2d 856, 867

28   (D.C. Cir. 1981) (concluding that Fed. R. Crim. P. 6(e) satisfies Exemption 3's statute requirement because it was amended by Congress).

**B.      Exemption 3 Precludes Further Processing of Plaintiffs' Request.**

1.      If this Court finds that Exemption 3 precludes the disclosure of sealed applications and orders, then further processing of part 1 of plaintiffs' FOIA request would be unnecessary. A contrary ruling – that USAO-NDCA must continue to process plaintiffs' FOIA request – would not merely be unduly burdensome, but would waste the office's limited resources, because no sealed records can be disclosed to plaintiffs in any event.

While the LIONS search has narrowed the scope of potential matters at issue, the task of processing the remaining matters remains monumental. There are 760 matters identified through the LIONS search that may contain responsive records and that have not yet been produced to plaintiffs. However, each matter identified through the LIONS search may contain more than one line of information; in other words, there are likely thousands of additional lines of information that would need to be further reviewed, with each line potentially reflecting a separate application for a court order seeking location information. *See* Kenney Decl. ¶ 15 (noting that 1184 matters produced key words in 3692 lines of data). Further processing of these matters will therefore require that countless files be retrieved and hand-searched. While some matters consist of one folder of information; others may contain many boxes of documents (or even fill an entire storage room). Kenney Decl. ¶ 5. Some materials are located in the USAO-NDCA; others would need to be retrieved from off-site storage. Kenney Decl. ¶ 5. Once retrieved, hand-searching through the materials would be anything but routine: Each document identified as an application for a pen register would need to be reviewed line-by-line, as many pen register applications do not seek location information. *See* Kenney Decl. ¶ 6. In many cases this would be like looking for a needle-in-a-haystack, as some sections rarely use location tracking information. Kenney Decl. ¶ 6. And once the applications are identified, ascertaining their sensitivity would be a nearly impossible task: Particularly for older records, there has been a substantial turn-over in both AUSAs and agents, making it impossible to ascertain with certainty whether the information contained in those older applications and orders are now benign. *See generally* Kenney Decl. ¶¶ 7-9. USAO-NDCA would nonetheless need to try to determine whether any exemptions should be claimed and, because the applications typically

DEFENDANT'S NOTICE OF MOTION & MOTION FOR PARTIAL SUMMARY JUDGMENT & MEM. IN SUPPORT
Case No. 12-cv-4008-MEJ

18

1   contain declarations from agents, USAO-NDCA would also need to consult with applicable law

2   enforcement agencies in order to allow them to express their views on exemptions. *See, e.g.*,

3   Kenney Decl. ¶ 22 (describing consultation with investigatory agency regarding potential

4   unsealing of applications). Even when an investigation is closed, USAO-NDCA would need to

5   ascertain whether there are any fugitives who could be alerted to the existence of the

6   investigation. *See* Kenney Decl. ¶ 7. As location information is regularly used in prosecuting

7   street gangs, violent crimes, and drug trafficking, *see* Kenney Decl. ¶ 6, the premature disclosure

8   of any of this information could literally result in violence, *see* Kenney Decl. ¶ 7.

9           Even setting aside the fact that these materials were filed under seal, the tasks that

10  USAO-NDCA would need to undertake to further process plaintiffs' FOIA request would

11  literally turn it into a research service, conducting a full-time investigation into five years of its

12  files in order to ascertain whether individual records are responsive and, if so, whether they can

13  be disclosed on a record-by-record basis. *See AARC*, 720 F. Supp. at 219; *see also Freedom*

14  *Watch*, 895 F. Supp. 2d at 229 (request impermissibly requires agency "to undertake an

15  investigation"). Relative to the volume of materials that the Criminal Section of USAO-NDCA

16  maintains, the request is "so broad as to impose an unreasonable burden upon the agency." *Am.*

17  *Fed'n of Gov't Emps.*, 907 F.2d at 209; *see also Int'l Counsel Bureau*, 723 F. Supp. 2d at 59-60

18  (D.D.C. 2010) (request seeking search of unlabeled and unindexed videos improper); *Dale*, 238

19  F. Supp. 2d at 104 (D.D.C. 2002) (request seeking all documents regarding plaintiff improper).

20  And, of course, all of this effort would be for naught if none of the records could be disclosed

21  anyway, as the miscellaneous and similar matters in which they were filed remain under seal.

22
23  **III.    To the Extent USAO-NDCA is Required to Further Process Plaintiffs' Request, It
             Should Not Be Required to Retrieve Files that it Can Determine Involve Open
24           Investigations.**

25          FOIA protects from mandatory disclosure "records or information compiled for law

26  enforcement purposes" when, among other issues, production of the documents "(A) could

27  reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). As

28  a threshold issue when analyzing Exemption 7, the Court must make a determination as to

DEFENDANT'S NOTICE OF MOTION & MOTION FOR PARTIAL SUMMARY JUDGMENT & MEM. IN SUPPORT
Case No. 12-cv-4008-MEJ

# Exhibit 3

1 | STUART F. DELERY
Assistant Attorney General

2 | ELIZABETH J. SHAPIRO (D.C. Bar No. 418925)
3 | Deputy Branch Director

4 | BRAD P. ROSENBERG (D.C. Bar No. 467513)
Trial Attorney
5 | U.S. Department of Justice
Civil Division, Federal Programs Branch
6 | P.O. Box 883
Washington, D.C. 20044
7 | Telephone: (202) 514-3374
Facsimile: (202) 616-8460
8 | E-mail: brad.rosenberg@usdoj.gov

9 | Attorneys for Defendant
U.S. Department of Justice

10

11 | UNITED STATES DISTRICT COURT

12 | NORTHERN DISTRICT OF CALIFORNIA

13 | SAN FRANCISCO DIVISION

14 | AMERICAN CIVIL LIBERTIES UNION ) No. 12-CV-4008-MEJ
15 | OF NORTHERN CALIFORNIA; )
SAN FRANCISCO BAY GUARDIAN, )

16 | Plaintiffs, ) DECLARATION OF PATRICIA J. KENNEY
) IN SUPPORT OF THE DEPARTMENT OF
17 | v. ) JUSTICE'S MOTION FOR SUMMARY
) JUDGMENT AS TO PART 1 OF PLAINTIFF'S
18 | DEPARTMENT OF JUSTICE ) FREEDOM OF INFORMATION ACT REQUEST
)
19 | Defendant. )
_____)

20

21

22 | I, Patricia J. Kenney, declare pursuant to 28 U.S.C. § 1746 as follows:

23 | 1.       I am an Assistant United States Attorney ("AUSA") in the Criminal Division of the

24 | Office of the United States Attorney ("USAO") for the Northern District of California ("NDCA"), and

25 | am admitted to practice law in the State of California. Since the spring of 2011, I have been assigned as

26 | a collateral duty, in addition to my regular duties, the responsibility in the NDCA Criminal Division

27 | ("Criminal Division") for advising management on its responsibilities under the Freedom of Information

28

KENNEY DECL.
NO. 12-CV-4008 MEJ                                      1

1 USAO could identify and locate all search warrants or pen registers, not all of them would be responsive
2 to Part 1. The frequency that an application for an order seeking location tracking information is used as
3 an investigative tool depends on the type of criminal investigation involved. For example, AUSAs
4 developing white collar cases involving economic crimes or securities fraud, as well as those
5 investigating criminal matters involving national security, make far fewer applications for location
6 tracking information than do AUSAs developing criminal cases involving street gangs, violent crimes or
7 drug trafficking. For the latter AUSAs, the use of pen registers and search warrants is an essential
8 investigative technique. Thus, looking for responsive records in the files generated in connection with
9 the investigation of economic crimes, securities fraud or national security matters would be like looking
10 for needles in a haystack – requiring a search of the entire, often voluminous, file even though that file
11 may have few or no documents responsive to Part 1 of the ACLU's request. Further complicating a
12 search are the practices among Criminal Sections in the USAO and among the AUSAs within those
13 sections as to whether they obtain a new USAO number when applying for orders, including orders
14 seeking location tracking information, or whether they make applications for orders using a USAO
15 number already assigned to an investigation. There is no uniform office practice.

16       7.     When using investigative tools such as applying for an order seeking location tracking
17 information, the general practice at the USAO is also to apply to seal the application (if any), affidavit
18 (if any) and order. A sealing order prohibits the USAO from disclosing sealed documents to the public.
19 Sealing investigative tools requiring a court order – such as applications and orders seeking location
20 tracking information – is critical. AUSAs who apply for such orders do so to develop evidence of the
21 criminal activities of one or more targets who likely are unaware of the investigation. Sealing the
22 applications and orders avoids jeopardizing the investigation by its premature disclosure. Even after the
23 indictment of one target, the AUSA often has an interest in not letting the target's associates who are
24 still under investigation become aware of specific investigative techniques which the AUSA may
25 continue to use to develop evidence of criminal activities. In a complex, multi-year, investigation, there
26 are often multiple defendants who could include fugitives from whom the AUSA wants to withhold the
27 investigative techniques used. The sealed applications for location tracking information may be

28

KENNEY DECL.
NO. 12-CV-4008 MEJ           5

1  supported by affidavits which identify confidential informants ("CIs") or confidential sources ("CSs"),
2  or include information which could lead to the identification of those CIs or CSs. Disclosure could
3  endanger the CIs or CSs, particularly in investigations involving street gangs, violent crimes and drug
4  trafficking. Finally, as described below, of the files the USAO identified as possibly containing
5  applications and orders for location tracking information, the supervisor of OCDETF/Narcotics
6  determined that approximately 50% of those files involve open, ongoing OCDETF/Narcotics
7  investigations which may be subject to withholding under Exemption 7, and supervisors from other
8  sections have not yet reviewed the other 50% of the files to determine how many of those files involve
9  open, ongoing investigations in other sections.

10  8.  There is no uniform practice in the USAO for opening or closing matters which use
11  investigative techniques such as sealed applications and orders seeking location tracking information.
12  For example, the general practice in OCDETF/Narcotics is to obtain a new USAO number for each
13  application for a pen register or search warrant, including those seeking location tracking information,
14  and to close the matter at the end of the time period for which the order authorized use of a particular
15  device (including extensions), even though the related investigation under a separate USAO number
16  may be ongoing for a considerable amount of time. In other sections, such as Special Prosecutions/
17  National Security and Economic Crimes/Securities Fraud, the usual practice appears to be to use the
18  same USAO number of the underlying investigation when applying to the court for a sealed order
19  seeking location tracking information. That said, the actual practice used can vary from attorney-to-
20  attorney and case-to-case.

21  9.  There is no systematic review on an ongoing basis of the sealed applications to determine
22  whether the conditions requiring sealing continue, and such a review would be impractical, particularly
23  in investigations or cases which continue for several years. It is difficult, years after the sealing of
24  applications and orders, to determine the potential harm from the unsealing of these documents even if
25  the AUSA is still in the office and the agent is in the area. Often the agent or AUSA originally handling
26  the application (or both) has become unavailable. Nevertheless, the need to keep confidential
27  ///

28

1 information regarding confidential sources and informants does not necessarily diminish with the
2 passage of time, even though the USAO's ability to evaluate that need does diminish with time.

3       10.     During the course of working on the USAO's response to Part 1 of the ACLU's FOIA
4 request, I am aware of only one exception to the general practice of asking the Court to seal an
5 application for an order seeking location tracking information. In one case, an AUSA made two
6 applications for orders to obtain location tracking information without requesting the Court to seal those
7 applications and orders. In that case, the AUSA did not request sealing because the target knew of the
8 investigation. We have produced those two applications and orders to the ACLU in response to Part 1
9 by letter dated September 13, 2013.

10                             **Searches to Identify and Locate Part 1 Documents**

11       11.     Because of the impractical task of searching paper files for documents responsive to Part
12 1, the USAO explored using its electronic case management system, LIONS, to identify files in which
13 there might be documents responsive to Part 1 of the ACLU's FOIA request. To do so, the USAO
14 leadership developed a list of search terms and the USAO IT Staff, using those terms, conducted key
15 word searches of the "caption" field and the "comment" field in LIONS for the period from January 1,
16 2008 through January 3, 2013 – the same search period that the parties agreed to in conducting the
17 search for documents responsive to Parts 2 through 4 of the ACLU's FOIA request.

18       12.     The search terms were developed by knowledgeable AUSAs and supervisors and shared
19 with the ACLU. Additional terms were used based on input from the ACLU. Initially, the USAO
20 searched only the "caption" field, a required field, but later added a search of the "comment" field, an
21 optional field, at the request of the ACLU. Because the search function could not be used to do a single
22 search in both fields, the IT Staff performed a search in each field and spent several hours eliminating by
23 hand the duplicate entries.

24       · 13.     The search terms, which follow, are ones that are believed to have been most likely used
25 by AUSAs and USAO docket clerks in the "caption" field when opening new matters involving
26 applications for orders seeking location tracking information, and also by AUSAs in the "comment"
27 field when updating matters in connection with the same type of applications:

28 ///
KENNEY DECL.
NO. 12-CV-4008 MEJ          7